# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT HUNTINGTON

| | |
|---|---|
| STATE OF WEST VIRGINIA *ex rel*. DARRELL V. MCGRAW, JR., ATTORNEY GENERAL, <br><br>                      **Plaintiff,** <br><br>     **v.** <br><br> PFIZER, INC., PFIZER IRELAND PHARMACEUTICALS, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY, LLC, RANBAXY INC., RANBAXY PHARMACEUTICALS, INC., AND RANBAXY LABORATORIES LIMITED, <br><br>                      **Defendants.** | **Case No.:** __3:13-cv-2546__ <br><br> **[Removed from Circuit Court of Mason County Action No. 13-C-1-N]** |

**TO:   THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

### NOTICE OF REMOVAL OF ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1338, 1367, 1441, 1446, 1453 & 1454

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 1441, 1446, 1453 and 1454, PFIZER INC., PFIZER IRELAND PHARMACEUTICALS, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY, LLC, RANBAXY INC., RANBAXY PHARMACEUTICALS, INC., and RANBAXY LABORATORIES LIMITED (collectively, "Defendants"), hereby jointly remove this action, initially filed in the Circuit Court of Mason County, to the United States District Court for the Southern District of West Virginia.

This action is removable on two separate and independent grounds.  First, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's complaint (the "Complaint") requires the resolution of substantial questions of federal patent law and federal law, and thus removal is proper under 28 U.S.C. §§ 1441 and 1453.  Second, this Court has

jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and thus removal is proper under 28 U.S.C. § 1441.

## REMOVED CASE

1.      The removed case is a civil action filed initially on January 2, 2013, in the Circuit Court of Mason County, West Virginia, styled *State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General v. Pfizer Inc. et al.*, Civil Action No. 13-C-1-N.  A copy of the Complaint filed in this action is attached as Exhibit A to the Declaration of Paula Durst in Support of the Notice of Removal of Action from State Court Pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 1441, 1446, 1453 and 1454.  Durst Decl. ¶¶ 2-3, filed concurrently herewith.

2.      All defendants join in and consent to the removal of this action.  Durst Decl. ¶ 13.

3.      Plaintiff, the Attorney General for the State of West Virginia, filed the removed action, alleging violations of: (1) the West Virginia Antitrust Act, W. Va. Code §§ 47-18-1, *et seq.*; and (2) the West Virginia Consumer Credit Protection Act, W. Va. Code §§ 46A-1-101, *et seq.*  Plaintiff seeks unspecified treble damages, restitution, disgorgement, costs, attorneys' fees and injunctive relief.  Compl. at 94.

## REMOVAL IS TIMELY

4.      Plaintiff filed the Complaint in the Circuit Court of Mason County on January 2, 2013.  Durst Decl. ¶ 2 & Ex. A.  Pfizer Inc. received notice of this action on January 14, 2013, when it received a copy of the Complaint and summons.[1]  Durst Decl. ¶¶ 4, 6 & Ex. B.  Warner-Lambert Company received notice of this action on January 15, 2013, when it received a copy of

---

[1] The thirty-day time limit for removal does not begin until service on or receipt by a defendant's designated agent.  *Gordon v. Hartford Fire Ins. Co.*, 105 F. App'x 476, 480-81 (4th Cir. 2004); *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 673 (S.D.W. Va. 2002); *see also* 14C Charles Wright et al., *Fed. Prac. & Proc. Juris.* § 3731 (4th ed.) ("[I]t now appears to be settled law that the time for removal begins to run only when the defendant or someone who is the defendant's agent-in-fact receives the notice via service[.]").

2

the Complaint and summons.  Durst Decl. ¶ 7 & Ex. B.  Warner-Lambert Company LLC received notice of this action on January 14, 2013, when it received a copy of the Complaint and summons.  Durst Decl. ¶ 8 & Ex. B.  Pfizer Ireland Pharmaceuticals has not received notice of this action.  Durst Decl. ¶¶ 9.  Ranbaxy, Inc. received notice of this action on January 17, 2015, when it received a copy of the Complaint and summons.  Durst Decl. ¶ 10 & Ex. B. Ranbaxy Pharmaceuticals, Inc. received notice of this action on January 15, 2013, when it received a copy of the Complaint and summons.  Durst Decl. ¶ 11 & Ex. B.  Ranbaxy Laboratories Limited received notice of this action on February 6, 2013 when it received a summons.  Durst Decl. ¶ 12.

5.      A defendant has 30 days from receipt of the first pleading setting forth a removable claim to file a notice of removal in federal district court.  28 U.S.C. § 1446(b)(1); *see also id.* § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (requiring formal service to occur (or be waived) before the thirty-day period begins to run).  This Notice of Removal is based on the Complaint, which was received by Defendants less than 30 days ago, and is therefore timely filed.

## PAPERS FROM REMOVED ACTION

6.      In accordance with 28 U.S.C. § 1446(a), Defendants attach herewith a true and correct copy of all process, pleadings, and orders served in the state court action on Defendants as of the date of this Notice of Removal.  Durst Decl. ¶¶ 3-5, Exs. A-C.  In accordance with the Local Rules of Civil Procedure for the United States District Court for the Southern District of West Virginia, Defendants also attach herewith a true and correct copy of the docket sheet for

3

this case obtained from the Circuit Court of Mason County.  Durst Decl. ¶ 5, Ex. C.

## GROUNDS FOR REMOVAL

7.     Defendants assert two bases for removing this action:  (1) this Court has "federal question" jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and (2) this Court has jurisdiction under CAFA, 28 U.S.C. § 1332(d).

### a.     Federal Question Jurisdiction

8.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1441 and 1454 because this action originally could have been filed in this Court under 28 U.S.C. §§ 1331 and 1338(a).  Federal question jurisdiction exists whenever a "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well pleaded claims."  *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983) (noting that a case may "arise under" federal law if a "complaint established that [plaintiff's] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties").  This Court has jurisdiction because Plaintiff's claims necessarily require an adjudication of the scope and validity of Pfizer's Lipitor® patents.

9.     Under 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyright and trademarks."  Federal question jurisdiction exists under § 1338(a) whenever a plaintiff pleads a claim that: (1) arises out of federal patent law; or (2) necessitates the resolution of a "substantial question" of federal patent law for plaintiff to prevail.  *See Christianson*, 486

NEWYORK 8741898

U.S. at 809.

10.    Challenges to the validity and enforceability of a United States patent implicate federal law as equally as patent infringement claims.  *See Conroy*, 325 F. Supp. 2d at 1055 ("Challenges to the validity or enforceability of a patent . . . raise a federal question in the same way that an infringement claim otherwise would."); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) ("In keeping with our precedent, we treat validity and enforceability the same as infringement. . . . Each of these issues is substantial in the federal scheme, for they are essential to the federally created property right; one determines whether there is a property right, another whether that right is enforceable, and the third what is the scope of that right.").

11.    A complaint need not state a federal claim explicitly for removal to be appropriate.  Any state law claim that requires the adjudication of a substantial question of federal patent law implicates federal jurisdiction.  *See, e.g., Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993) ("Under Texas law, a business disparagement claim requires plaintiff to prove, as part of its prima facie case, the falsity of defendant's allegedly disparaging statements. . . .  To prove this aspect of its case (falsity), [plaintiff] must show that its product does not infringe the [patent at issue].  Thus, [plaintiff's] right to relief necessarily depends upon resolution of a substantial question of patent law[.]" (internal citation omitted)).

12.    In this case, Plaintiff's claims are predicated on its contention that the settlement agreement between Pfizer and the named Ranbaxy defendants (hereinafter referred to as "Ranbaxy") kept Ranbaxy's generic version of Lipitor® off the market, which it otherwise would

NEWYORK 8741898

have been able to enter on March 25, 2010. Compl. ¶¶ 3, 5, 17-28, 238-87. In support of this contention, Plaintiff makes several allegations that necessarily require an interpretation of the scope and validity of Pfizer's Lipitor® patents.

13.     First, the Complaint alleges that Pfizer "fraudulently obtain[ed] a second, duplicative patent from the United States Patent and Trademark Office ("PTO") and then wrongfully list[ed] that patent in the United States Food and Drug Administration's ("FDA") 'Orange Book.'" *Id.* ¶ 4. Indeed, Plaintiff expressly alleges that "[i]n absence of Warner-Lambert's fraud, the '995 Patent would never have issued." *Id.* ¶ 152.

14.     Although presented as violations of the West Virginia Antitrust Act and Consumer Credit Protection Act, Plaintiff's claims are clearly based on allegations of *Walker Process* fraud. Claims based on *Walker Process* fraud require resolution of a substantial question of federal patent law; here, whether Defendants engaged in unlawful conduct in the procurement of the '995 patent. *See, e.g.*, *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 685 (2d Cir. 2009) (noting that the *Walker Process* theory required resolution of a substantial question of patent law because materiality, justifiable reliance and "but-for" causation implicated issues of patentability); *Doran v. Purdue Pharma Co.*, 324 F. Supp. 2d 1147, 1151 (D. Nev. 2004) (substantial question of federal patent law existed in determination of whether defendants fraudulently obtained their patents through intentional misrepresentations to the PTO); *Coker v. Purdue Pharma Co.*, 314 F. Supp. 2d 777, 783–84 (W.D. Tenn. 2004) (noting that *Walker Process* claim required resolution of a substantial question of patent law).

15.     Second, the Complaint alleges that Pfizer "fil[ed] a sham 'Citizen Petition' with the FDA in an effort to stall approval of generic Lipitor." Compl. ¶ 4. The citizen petition raises questions of federal patent law because the patents at issue here were all valid and enforceable

6

throughout the entire pendency of the petition, thus precluding any unlawful intent or motives where Pfizer's Lipitor® was protected during this period.  *See DDAVP*, 585 F.3d at 687 (suggesting that filing of citizen petition implicating enforceable patent "raises question of patent law").  Further, because citizen petitions are creatures of federal food and drug law, challenges to a citizen petition also raise substantial issues of federal law.  *In re Zyprexa Prod. Liab. Lit.*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 WL 398378 at *5 (E.D.N.Y. Feb. 12, 2008) (off-label marketing claims raised "substantial federal questions by requiring the court to interpret the meaning of the FDCA and its implementing regulations").

16.     Plaintiff alleges that the citizen petition here was objectively baseless because it contained no evidence suggesting that Ranbaxy's proposed generic Lipitor®, as set forth in its Abbreviated New Drug Application ("ANDA"), was not bioequivalent to branded Lipitor®, or that Ranbaxy's proposed generic Lipitor® would not satisfy the conditions for approval under the FDCA and current good manufacturing processes.  Compl. ¶ 218.  Plaintiff's claim thus requires resolution of a substantial question of federal law because it necessitates a review of the ANDA approval and citizen petition processes, which the FDA and federal law govern exclusively, and requires the court to evaluate the purported equivalence of the proposed ANDA product to branded Lipitor® and its patents.  21 U.S.C. §§ 355 *et seq.*

17.     Third, the Complaint alleges that Pfizer "embark[ed] on an anticompetitive market allocation agreement" with Ranbaxy.  Compl. ¶ 4.  Plaintiff contends that Pfizer settled with Ranbaxy based on the probability that the '995 patent would be invalidated in the absence of such a settlement.  *See, e.g.*, *id.* ¶¶ 17-19.  Again, Plaintiff's claim is premised on its contention that the '995 patent was invalid or unenforceable, requiring resolution of substantial questions of federal patent law.

18.     By stating that the settlement agreement unlawfully extended Pfizer's patent monopoly past March 24, 2010, the expiration date of the '893 patent, Plaintiff actually puts into question the infringement, validity and enforceability of all the Lipitor® patents.  *Id.* ¶ 3 (alleging that "the Pfizer Defendants initiated a scheme to delay the entry of generic Lipitor® for a full 20 months); *id.* ¶ 27 (noting that "absent Defendants' anticompetitive conduct, generic Lipitor® would have been available around the time the '893 Patent expired in March, 2010").  Aside from the '995 patent, which expired in June 2011, *id.* ¶ 177, Pfizer owns other patents covering Lipitor® that expire after March 24, 2010.  These patents include: U.S. Patent No. 6,126,971 (expiring July 19, 2013), U.S. Patent No. 5,969,156 (expiring January 8, 2017) and U.S. Patent No. 5,686,104 (expiring May 11, 2015).  Durst Decl. ¶ 14 & Ex. D; *see also* Compl. ¶¶ 170, 262. Pfizer also owns process patents relating to Lipitor®:  U.S. Patent 6,087,511 and U.S. Patent No. 6,274,740.  Compl. ¶ 248.

19.     Furthermore, Plaintiff's claims of harmful anticompetitive conduct by Defendants turn entirely on its allegations that the settlement agreement between Pfizer and Ranbaxy illegally altered the market for atorvastatin calcium by protecting an off-patent drug.  Plaintiff alleges that if Pfizer and Ranbaxy had not entered into a settlement agreement, Ranbaxy would have launched generic Lipitor® into the market sooner than it did.  Plaintiff also alleges that if Ranbaxy and other generic manufacturers had entered the market, Plaintiff would have paid less for its atorvastatin calcium products.  *Id.* ¶ 5.  To prove these allegations, Plaintiff must show that under federal patent law, the '995 patent or other Lipitor® patents described in paragraph 18 above would not have blocked generic entry into the Lipitor® market.  Without such a showing, Plaintiff cannot demonstrate that Defendants' settlement agreement had any adverse market

8

effects or harmed it in any way.[2]  Further, with respect to Plaintiff's sham litigation claims, *id.* ¶¶ 272-287, Plaintiff must prove that no reasonable litigant could have expected Pfizer to succeed on the merits in enforcing its Lipitor® patents, which again requires resolution of substantial questions of federal patent law.  *See, e.g.*, *Doran*, 324 F. Supp. 2d at 1151 ("The question whether a litigant had a reasonable prospect of prevailing in a federal patent lawsuit can only be evaluated by reference to the standards of federal law for the enforcement of a patent.").

20.     The Complaint therefore squarely presents federal questions.  As such, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.     Even assuming, *arguendo*, that certain claims are not based on federal law, they are within the Court's supplemental jurisdiction, 28 U.S.C. § 1367, and are removable pursuant to 28 U.S.C. § 1441.  If some of Plaintiff's claims are based on state law and some are based on federal law, the "state claims are deemed supplemental to a proper federal question claim," and all are within the jurisdiction of the federal court.  16-106 Moore's Federal Practice - Civil § 106.47.  Therefore, because the claims against all defendants "are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution," they are all within the Court's

---

[2] The majority of federal courts of appeals have held that patent settlements consistent with the scope of the settled patent were lawful, barring fraud in the procurement of the patents or sham enforcement.  *See, e.g., F.T.C. v. Watson Pharm., Inc.*, 677 F.3d 1298 (11th Cir. 2012); *Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98 (2d Cir. 2010); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323 (Fed. Cir. 2008); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2006); *Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056 (11th Cir. 2005); *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294 (11th Cir. 2003).  Two early circuit court decisions addressed agreements falling outside the scope of the patents and are reconcilable with later courts' "scope of the patent" test.  *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003); *Andrx Pharm. Inc. v. Biovail Corp. Int'l*, 256 F.3d 799 (D.C. Cir. 2001); *see Tamoxifen*, 466 F.3d at 213-14 (distinguishing *Cardizem*).  The question of whether a pharmaceutical patent settlement agreement falls within the scope of a patent requires resolution of substantial questions of federal patent law concerning the infringement, validity and enforceability of patents.

9

supplemental jurisdiction.  28 U.S.C. § 1367(a).

      **b.**      **Diversity Jurisdiction Based on CAFA**

      22.      This Court also has jurisdiction over this action pursuant to CAFA.  28 U.S.C. § 1332(d)(2)(A); *see W. Va. ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) (finding an antitrust and consumer protection suit alleging violations of W. Va. Code sections 47-18-1, *et seq.* and 46A-6-101, *et seq.* to be removable under CAFA).  Although labeled a "*parens patriae*" action, Compl. ¶ 30, this action is, in substance and fact, a "class action" removable under CAFA.  28 U.S.C. §§ 1332(d), 1453(b).  The action seeks treble damages on behalf of the state, but also on behalf of a class of "natural persons residing in West Virginia who paid more for atorvastatin calcium."  Compl. ¶ 5.  Because the vast majority of Lipitor® sales were made to the individual citizens of West Virginia, West Virginia citizens – not the West Virginia Attorney General or the State of West Virginia – are the "real parties in interest" with respect to the damage claims asserted in the Complaint.  Moreover, the Complaint was signed on behalf of (and presumably prepared by) The Giatras Law Firm, a private plaintiffs' law firm, and that same firm, rather than the West Virginia Attorney General, served process on Pfizer.  Thus, as explained further below, this action is effectively a class action.

      23.      The *parens patriae* doctrine has been construed as affording each of the sovereign states the right to sue "to prevent or repair harm to its 'quasi sovereign' interests."  *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 258 (1972).  A "quasi sovereign interest" is defined as "an interest apart from that of particular individuals who may be affected."  *Georgia v. Penn. R. Co.*, 324 U.S. 439, 451 (1945).  Accordingly, in a proper *parens patriae* suit, the state is deemed to represent all of its citizens.  *La. ex rel. Guste v. Verity*, 681 F. Supp. 1178, 1181 (E.D. La. 1988), *aff'd*, 850 F.2d 211 (5th Cir. 1988); *see also Pennsylvania v. Porter*, 659 F.2d 306, 329 (3d Cir.

1981) ("[T]he state, in order to assert *parens patriae* standing, must allege and must establish a widespread injury or threat which affects, or could potentially affect, the well-being of virtually all of its citizens.").

24.     The Supreme Court has underscored the difference between a *parens patriae* action and a representative suit to redress injuries suffered by identifiable private parties. "Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement.  In such situations, the State is no more than a nominal party."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602 (1982).

25.     Here the real parties in interest are the individual consumers of West Virginia. The text of the West Virginia Antitrust Act, which authorizes the recovery of treble damages, states that "[a]ny person who shall be injured in his business or property by reason of a violation of the provisions of this article may bring an action therefor and shall recover threefold the damages sustained by him."  W. Va. Code § 47-18-9.   The plain language of that provision makes clear that individuals have the right to enforce that provision.  *See La., ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008) (finding that individual policy holders and not the state were real party in interest).  The Complaint makes clear that it is seeking to recover damages on behalf of "natural persons residing in West Virginia who purchased Lipitor in West Virginia."  The West Virginia consumers are the true parties in interest, especially given that the purpose of antitrust treble damages provisions are to encourage private lawsuits by aggrieved individuals for injuries to their businesses or property.  *See Hawaii*, 405 U.S. at 262.

26.     Furthermore, *parens patriae* authority historically has been used by a state to seek injunctive relief and not to seek damages for a group of individual citizens.  *California v. Frito-*

11

*Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973); *Hawaii*, 405 U.S. at 266 (noting that "*parens patriae* actions may, in theory, be related to class actions, but the latter are definitely preferable in the antitrust area"); *see also Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 309 F. Supp. 1057, 1062 (E.D. Pa. 1969) ("[S]uits by a state to recover damages on behalf of individuals as '*parens patriae*' would present complex and difficult administrative problems," and *parens patriae* cases do not allow for the manageability of extraordinarily complex litigation the way that the safeguards of Rule 23 do.).

27. The fact that this action has been labeled a "*parens patriae*" action rather than a "class action" is in no way dispositive. In adopting CAFA, Congress emphasized that the term "class action" should be defined broadly specifically to prevent this type of "jurisdictional gamesmanship":

> [T]he Committee further notes that the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (2005).

28. Once the Court looks beyond the "*parens patriae*" label, it is clear that this action meets the requirements for removal under 28 U.S.C. §§ 1332(d), 1441 and 1446: (1) the parties are at least minimally diverse (indeed, all the members of the putative class have a different citizenship from all of the defendants); (2) the size of the proposed class exceeds 100 members; and (3) the aggregate amount in controversy exceeds $5,000,000.

29. The West Virginia Antitrust Act is a state statute "similar" to Rule 23 "authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Act authorizes the Attorney General to bring antitrust claims "on behalf of"

12

West Virginia citizens and establishes detailed procedures that parallel the provisions of Rule 23. *Compare* W. Va. Code § 47-18-17, *with* Fed. R. Civ. P. 23.

30.     Here, the real parties in interest – natural persons residing in West Virginia who allegedly paid more for atorvastatin calcium – constitute the putative class members under CAFA. 28 U.S.C. § 1332(d)(1)(D).  According to the Complaint, the defendants are all citizens of states other than West Virginia.  Compl. ¶¶ 31-38.  Thus, the parties are completely diverse and CAFA's minimal diversity requirement is met.  *See* 28 U.S.C. § 1332(d)(2)(A).

31.     Based on the facts alleged in the Complaint, approximately 146,500 West Virginians purchased daily doses of atorvastatin calcium in 2000.  Compl. ¶ 58; Census 2000 data for West Virginia.  Accordingly, the proposed class is well in excess of CAFA's 100 member minimum requirement.

32.     Defendants do not concede that this action may be maintained as a class action, or that the proposed class is owed in excess of $5,000,000 or any other amount whatsoever, but the facts alleged in the Complaint make clear that the amount "in controversy" exceeds $5,000,0000.  "The accepted practice is to treat the amount requested by the plaintiff in state court as the amount in controversy for removal jurisdiction purposes."  *Hamilton, Burgess, Young & Pollard, PLLC v. Markel Am. Ins. Co.*, No. Civ. A. 1:05 0769, 2006 WL 218200 at *2 (S.D.W.Va. Jan. 25, 2006).  Where, as here, an amount is not specified in the complaint, "the object which is sought to be accomplished by the plaintiff may be looked to in determining the value of the matter in controversy."  *Cannon v. United Ins. Co.,* 352 F. Supp. 1212, 1217 (D.S.C. 1973).  Furthermore, when the plaintiff alleges an indeterminate amount of damages, courts may consider the plaintiff's claims, as alleged in the complaint, the notice of removal filed with a federal court, and other relevant materials in the record in calculating the amount in controversy.  *Crosby v. CVS Pharm., Inc.,* 409 F.

13

Supp. 2d 665, 667 (D.S.C. 2005).

33.   As previously noted, the putative class members are natural persons residing in West Virginia who allegedly paid more for statins.  Compl.  ¶ 5.  The Complaint further alleges that a single daily pill of a branded statin cost between $2.50 and $5.00 and that "generic statins cost markedly less, sometimes $1 a day." *Id.* ¶ 59.  The Complaint also alleges that Defendants were able to delay the introduction of generic Lipitor® for "20 months" and that during this period, Pfizer accounted for 100% of the branded statin market.  *Id.* ¶¶ 3, 298.  Based on these allegations, West Virginians purportedly suffered approximately $220,000 to $586,000 in damages per day, with accumulated damages over 20 months somewhere between $132,000,000 and $351,000,000.

34.   Where both actual and punitive damages are allegedly recoverable under a complaint, "each must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943); *White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 27 (S.D.W.Va. 1994) ("The law makes clear that a good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy . . . .").  Based on the allegations in the Complaint, a trebling of damages would, at a minimum, approach $396,000,000 and be well in excess of the $5,000,000 minimum requirement of CAFA.

35.   In addition to treble damages, the Complaint also seeks attorneys' fees for prosecuting this action – further increasing the amount in controversy.  Compl. at 95.  Where, as here, the statute underlying the plaintiff's claim permits attorneys' fees, those fees must be included in the amount in controversy.  W. Va. Code § 47-18-9 (authorizing recovery of attorneys' fees); *see also Hamilton, Burgess, Young & Pollard, PLLC*, 2006 WL 218200 at *2 (noting that consequential damages, such as attorney fees, contributed to finding that "in West Virginia,

14

plaintiffs' recovery is theoretically unlimited"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (upholding denial of remand motion where district court added attorneys' fees "measured by a 'conservative' estimate of 12.5% of the alleged economic damages" to determine the amount in controversy").   Applying the "conservative" estimate of *Guglielmino* to an estimated $396,000,000 damage claim implicates possible attorneys' fees of approximately $47,500,000.

36.     Finally, this action also seeks "restitution and/or disgorgement of unlawful profits from the Defendants under the West Virginia Consumer Credit Protection Act."  Compl. ¶ 333.  The Act provides that the minimum damages recoverable by an individual consumer are $200.  *See* W. Va. Code § 46A-6-106(a) (allowing recovery of "actual damages or two hundred dollars, whichever is greater").  This would require only 25,000 West Virginia consumers to have purchased brand name Lipitor® during the relevant time period to satisfy CAFA, regardless of any other damages or costs.

## PROCEDURAL MATTERS

37.     As required by 28 U.S.C. § 1446(d), Defendants will promptly file with the Circuit Court of Mason County a Notice to Trial Court and Adverse Parties of Removal to Federal Court, and serve upon Plaintiff a true and correct copy of this Notice.  *See Notice to Trial Court and Adverse Parties of Removal to Federal Court*, attached hereto as Exhibit 1.

38.     Defendants also will promptly serve upon Plaintiff a true and correct copy of the supplementary materials required by L.R. Civ. 3.4(b).

39.     Defendants have made no previous application for the relief requested herein.

## NON-WAIVER OF DEFENSES

40.     Defendants expressly reserve all of their defenses.  By removing this action to this Court, Defendants do not waive any rights or defenses available under federal or state law.

NEWYORK 8741898

Defendants expressly reserve the right to move for dismissal of Plaintiff's Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.  Nothing in this Notice of Removal should be taken as an admission that Plaintiff's allegations are sufficient to state a claim or have any substantive merit.

## DISTRICT ASSIGNMENT

41.     The United States District Court for the Southern District of West Virginia is the proper forum for removal because this case was filed in the Circuit Court of Mason County.  *See* 28 U.S.C. §§ 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.")

## RELATED PROCEEDINGS

42.     On April 20, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") formed MDL No. 2332, centralizing related civil actions in the District of New Jersey before Judge Peter G. Sheridan.  *See In re: Lipitor Antitrust Litig.*, MDL No. 2332, Dkt. No. 67 (J.P.M.L. Apr. 20, 2012) ("Transfer Order").   Multiple tag-along actions with substantially identical allegations were also transferred to the MDL Court.  *See* MDL No. 2332, Dkt. No. 72 (J.P.M.L. May 1, 2012); *id.*, Dkt. No. 99 (May 24, 2012); *id.*, Dkt. No. 110 (July 20, 2012); *id.*, Dkt. No. 111 (July 25, 2012).  To date, the MDL consists of 25 direct and indirect class actions and four "opt-out" individual actions, all of which assert state and federal antitrust claims substantially similar to Plaintiff's claims.  Durst Decl. ¶ 15, Ex. E.

43.     Defendants intend to notify the JPML that this action is a "tag-along" case that should be incorporated into MDL No. 2332.

NEWYORK 8741898

WHEREFORE, Defendants hereby remove the above-entitled action to this Court from the Circuit Court of Mason County, West Virginia.

Dated:  February 13, 2013                                      Respectfully submitted,


By:  By:    /s/ Paula L. Durst_____
Paula L. Durst (WV Bar No. 5805)
**Spilman Thomas & Battle, PLLC**
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, WV 25321-0273
Phone: 304.340.3834
Fax: 304.340.3801
pdurst@spilmanlaw.com
*Counsel for Defendants Pfizer Inc.,*
*Warner-Lambert Company, Warner-*
*Lambert Company, LLC, Pfizer Ireland*
*Pharmaceuticals, Ranbaxy*
*Pharmaceuticals, Inc., Ranbaxy*
*Laboratories Limited, and Ranbaxy, Inc.*

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

| | |
|---|---|
| **STATE OF WEST VIRGINIA *ex rel*. DARRELL V. MCGRAW, JR., ATTORNEY GENERAL,**<br><br>                              **Plaintiff,**<br><br>**v.**<br><br>**PFIZER, INC., PFIZER IRELAND PHARMACEUTICALS, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY, LLC, RANBAXY INC., RANBAXY PHARMACEUTICALS, INC., AND RANBAXY LABORATORIES LIMITED,**<br><br>                              **Defendants.** | **Case No.: _____**<br><br>**[Removed from Circuit Court of Mason County Action No. 13-C-1-N]** |

## CERTIFICATE OF SERVICE

I, Paula L. Durst, hereby certify that on February 13, 2013, I electronically-filed the foregoing **"Notice of Removal of Action from State Court Pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 1441, 1446, 1453 & 1454," "Civil Cover Sheet," "Corporate Disclosure Statement for Defendants Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, and Warner-Lambert Company, LLC," and "Corporate Disclosure Statement for Defendants Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories Limited, and Ranbaxy, Inc."** with the Clerk of the Court using the CM/ECF system. I have placed a copy of the foregoing in the United States mail, postage prepaid addressed as follows:

Christopher Hedges
Senior Assistant Attorney General
Consumer Protection and Antitrust Division
**OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL**
P.O. Box 1789
Charleston, WV 25326-1789
Phone: 304.558.8986
Fax: 304.558.0184
*Attorney for Plaintiff*

18

Troy N. Giatras
**THE GIATRAS LAW FIRM, PLLC**
118 Capitol Street, Suite 400
Charleston, WV 25301
Phone: 304.343.2900
Fax: 304.343.2942
*Attorney for Plaintiff*

Frederick S. Longer
**LEVIN, FISHBEIN, SEDRAN, AND BERMAN**
510 Walnut St., Suite 500
Philadephia, PA 19106
Phone: 215.592.1500
Fax: 215.592.4663
*Attorney for Plaintiff*

By: _/s/ Paula L. Durst_____
Paula L. Durst (W. Va. Bar No. 5805)
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East
Charleston, WV 25301
Phone: 304.340.3834
Fax: 304.340.3801
pdurst@spilmanlaw.com
*Counsel for Defendants Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company LLC, Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories Limited, and Ranbaxy, Inc*

NEWYORK 8741898